## State v. Steen
### Case No. WD-88-57
### Wood County (6th)
### Decided February 9, 1990
[Cite as 1 AOA 225]

GLASSER, J.

This matter is before the court on appeal from a judgment of the Wood County Court of Common Pleas.

On November 18, 1987, at approximately 12:30 a.m., Ginny LeFevre completed her work shift as a fuel desk clerk at the Truck Stop America ("TSA") located at I-280 and Libbey Road in Lake Township, Ohio. LeFevre walked to her car and got in on the driver's side. Soon after she entered the vehicle, Oscar Bolin approached the car and made a gesture to LeFevre that evidently indicated he was interested in buying marijuana. LeFevre attempted to lock the car door as Bolin opened the door, entered the vehicle and forced LeFevre to move toward the passenger side.

While Bolin was entering LeFevre's car, defendant-appellant, David Edgar Steen, and Roger Hall were sitting in the cab of Bolin's semi-tractor trailer truck. The trio had driven the truck from Taylor, Michigan, and had stopped at the TSA only a short time before LeFevre finished her shift.

Bolin proceeded to pull LeFevre's car onto I-280 and drive, with appellant and Hall following in the truck, for approximately one mile. Bolin drove the car off the highway into a gravel parking area Appellant parked the truck twenty feet from the car.

After approximately fifteen minutes, Bolin and LeFevre approached the truck. The passenger door opened and Bolin and LeFevre entered the cab. Bolin instructed appellant to follow I-280 and then drive east on the Ohio Turnpike. Appellant was also told to turn off the citizen's band and regular radios.

As the truck approached the entrance to the turnpike, Bolin forced LeFevre into the sleeping area ("the sleeper") of the cab and closed the tarp separating the sleeper from the driver. Soon after leaving the turnpike entrance, Bolin raped LeFevre at gunpoint.

Approximately two hours later, appellant stopped the truck and he and Bolin changed places. Appellant and LeFevre spoke to one another at this point and there was some physical contact; however, LeFevre was not raped by appellant.

Appellant and Bolin switched places again prior to the truck crossing the Pennsylvania line. Shortly after entering Pennsylvania, appellant stopped the truck. LeFevre, blindfolded with her smock, was led by Bolin away from the truck, across a field and released.

Appellant was indicated by the Wood

County Grand Jury on January 21, 1988, for the kidnapping and rape of LeFevre. The bill of particulars, filed by plaintiff-appellee, the state of Ohio, on April 7, 1988, alleged that appellant aided and abetted Bolin in the aforementioned crimes.

Following a jury trial, appellant was found guilty of aiding and abetting on both counts. On August 4, 1988, appellant moved for a new trial and acquittal. In an entry dated August 22, 1988, appellant was ordered to serve two concurrent nine to twenty-five year sentences. Appellant's post-trial motion were denied on August 26, 1988.

It is from the judgment entry of sentencing that appellant has appealed assigning the following as error:[1]

"1. THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT'S MOTIONS FOR ACQUITTAL BECAUSE OF INSUFFICIENT EVIDENCE TO SUPPORT CONVICTION.

"2. THE TRIAL COURT COMMITTED PLAIN ERROR IN ITS CHARGE TO THE JURY REGARDING THE REQUISITE CRIMINAL CULPABILITY TO CONVICT APPELLANT.

"3. THE TRIAL COURT ERRED BY NOT ADMITTING EVIDENCE REGARDING THE VIOLENT CHARACTER TRAITS OF OSCAR BOLIN.

"4. THE TRIAL COURT COMMITTED PLAIN ERROR IN ITS CHARGE TO THE JURY REGARDING THE AFFIRMATIVE DEFENSE OF DURESS.

"5. RAPE AND KIDNAPPING ARE ALLIED OFFENSES OF SIMILAR IMPACT [sic] UNDER O.R.C. 2941.25, AND AS SUCH A SENTENCE FOR BOTH CHARGES CANNOT BE ORDERED BY THE COURT.

"6. THE TRIAL COURT ERRORED [sic] BY FAILING TO GRANT APPELLANT'S MOTIONS FOR ACQUITTAL DUE TO INSUFFICIENT EVIDENCE TO SUPPORT CONVICTION AND FURTHER FAILING TO MAKE A RULING AT ALL.

"7. THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT'S MOTION FOR A NEW TRIAL UNDER CRIM. R. 33 DUE TO NEWLY DISCOVERED EVIDENCE.

"8. APPELLANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS OF LAW, WERE VIOLATED BY DEFENSE COUNSELS [sic] FAILURE TO PERFORM ESSENTIAL DUTIES OWED THE DEFENDANT."

In his first assignment of error, appellant argues that it was error for the trial court to deny his motion for acquittal because there was insufficient evidence to support his convictions. In essence, appellant asserts that his convictions were against the manifest weight of the evidence.

In order to support a conviction for aiding and abetting, it must be proven beyond a reasonable doubt that appellant had, in some way, participated in, or been a part of, the act or acts committed. *Columbus* v. *Russell* (1973), 39 Ohio App. 2d 139. A defendant's mere presence at the scene, or his acquaintance with the one committing such crime, in and of itself is not sufficient proof to support a conviction. The defendant "*** must incite, or procure, or encourage the criminal act, or assist or enable it to be done, or engage or counsel, or command the principal to do it." *Morei* v. *United States* (C.A.6, 1942), 127 F. 2d 827, 830.

In evaluating an assignment of error that attacks the sufficiency of the evidence, a reviewing court's examination of the record is limited to a determination of whether evidence was presented, "'* * * which if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 172 (citations omitted). Accordingly, our review is restricted to an appraisal of whether there was substantial evidence to support appellant's convictions.

The evidence in this case proves that appellant followed Bolin as Bolin drove LeFevre's car away from TSA. Appellant parked Bolin's truck near LeFevre's car when Bolin stopped. Appellant continued to drive the truck after Bolin and LeFevre entered the cab. By driving Bolin's truck, appellant assisted Bolin in the commission of both the kidnapping and the rape. The rape occurred as the truck was driven, by appellant, down the highway. LeFevre remained in the truck when appellant and Bolin switched places to allow Bolin to drive. Shortly thereafter the pair switched

again and appellant resumed the role of driver as Bolin continued to hold LeFevre captive in the truck.

The evidence shows that appellant did much more than "* * * see the crime being committed." *State* v. *Sims* (1983), 10 Ohio App. 3d 56, 56. His actions were an active contribution to the unlawful acts. Accordingly, we find that there was substantial evidence upon which the jury could have concluded that appellant was guilty beyond a reasonable doubt.

For the aforestated reasons, we find appellant's first assignment of error not well-taken.

In his second assignment of error, appellant argues that the trial court committed plain error in giving jury instructions regarding the requisite criminal culpability required to support a conviction. Appellant asserts that "purpose" was defined in two conflicting ways and that the inconsistent definitions had the effect of confusing the jury to appellant's prejudice.

Initially, we note that the claimed error was not raised in the trial court. Such failure ordinarily results in a complete waiver of any assertion of error. *State* v. *Awan* (1986), 22 Ohio St. 3d 120. Appellant, however, asserts that the aforementioned instruction was so egregious as to constitute plain error within Crim. R. 52(B) and, therefore, the judgment of the trial court should be reversed.

The Supreme Court of Ohio has state that an erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State* v. *Cooperrider* (1983), 4 Ohio St. 3d 226. Accordingly, we are faced with a two-part analysis. First, we must determine whether the instructions complained of were erroneous and/or confusing. If yes, we will then determine whether, but for the error, the result of the trial would clearly have been different.

In part, the two allegedly conflicting paragraphs are as follows. Paragraph one provides:

"A person acts purposely when it is his specific intention to cause a certain result. In must be established in this case at the time in question it was present in the mind of the defendant a specific intention to aid or assist Oscar Bolin in the engaging in sexual activity or to terrorize her. To do an act purposely is to do an act intentionally and not accidentally. Purpose and intent mean the same thing."

Paragraph two states:

"As this alleged incident began, it was not necessary that Mr. steen knew the kidnapping was to take place or that at that time he had then formulated intent to aid and assist Mr. Bolin. If you find from the evidence beyond any reasonable doubt that Mr. Steen at sometime formulated the intent to aid and assist in the kidnapping of Ginny LeFevre and he did aid and assist, then the element of purposeful activity has been established. If, however, you find the State has failed to establish that Mr. Steen ever formulated the intent to aid and assist Mr. Bolin in the commission of kidnapping, then you must find Mr. Steen not guilty of kidnapping as the State has then failed to establish the element of purpose."

Appellant asserts that the first instruction requires the jury to find that appellant formulated his intent prior to or contemporaneous with the principal's illegal actions. The second paragraph, according to appellant, requires only that the intent to aid or assist be formulated at some point during the incident. He argues that paragraph two had the effect of telling the jury that "bad conduct" at any time during the incident justifies conviction.

Our analysis of the aformentioned jury instructions indicates that neither paragraph is misleading or erroneous. The first paragraph sets forth an accurate definition of "purpose" and then refers to "the time in question." Contrary to appellant's assertion, the "time in question" does not refer to the time "prior to" or "contemporaneous with" the time *Bolin* kidnapped and raped LeFevre; it refers to the time *appellant* formulated his intent and then aided and assisted Bolin in these activities. Paragraph two asks the jury to determine whether appellant "formulated the intent to aid and assist in the kidnapping of Ginny LeFevre and he did act and assist * * *." In other words, the jury was asked, once again, to determine whether the evidence proved that *appellant* formulated the intent and then aided Bolin in committing the crimes.

Finding that the jury instructions were not erroneous or confusing, it is unnecessary for us to determine whether, but for the claimed error, the result of the trial would have been different.

For the aforestated reasons, we find appellant's second assignment of error not well-taken.

In his third assignment of error, appellant asserts that the trial court erred by refusing to admit the testimony of three witnesses who would have testified as to Bolin's violent character traits. Appellant argues that evidence of such character traits was essential to establish the affirmative defense of duress and should have been admitted.

Evid. R. 430 (A) provides:

"Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issue, or of misleading the jury."

Further, "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State* v. *Sage* (1987), 31 Ohio St. 3d 173, 180. We find that the court's determination that evidence of Bolin's tendency toward violence should be excluded was not an abuse of the court's discretion for the following reasons.

An essential feature of the defense of duress is the defendant's "* * * *sense* of a present, imminent, immediate and impending death or serious bodily injury." *State* v. *Cross* (1979), 58 Ohio St. 2d 482, 487. (Emphasis added.) The issue in the case *sub judice* was not whether appellant was telling the *truth* about the basis of his fear, but whether appellant had *heard* about Bolin's prior violent acts and whether *he* believed Bolin was prone to violence.

Presenting testimony regarding Bolin's tendency to be violent in other situations could divert the jury from the real issue to collateral matters. *State* v. *Smith* (1983), 10 Ohio App. 3d 99, 101. Evidence of Bolin's character for violence and aggression had a direct bearing on appellant's duress defense only if such traits were personally known to appellant at the time of the incident and only if such knowledge influenced appellant's behavior. What three other witnesses could tell the jury about Bolin's previous tendencies toward violence had the potential to mislead and confuse the jury and, therefore, were properly excluded pursuant to Evid. R. 403 (A).

For the aforestated reasons, appellant's third assignment of error is not well-taken.

In his fourth assignment of error, appellant argues that the trial court committed reversible error in its charge to the jury regarding the defense of duress. Appellant asserts that the instruction given by the trial court stated that any defendant, seeking to establish the duress defense, must escape id presented with a reasonable opportunity to do so, regardless of the reason he failed to escape, or have his defense rejected. Appellant also argues that the court erred by instructing the jury that the defendant must "* * * believe that he is in immediate and continuing danger * * *." By inserting the words "continuous" and implying an escape requirement, appellant asserts that the trial court elevated the burden of proof needed by defendant.

The instructions to which appellant objects are as follows:

"When a person is forced to participate in an offense against his will because he honestly believes or had good reason to believe that he is in immediate and continuing danger of death or great bodily harm, and that there is no reasonable opportunity to escape, he is then entitled to be acquitted on the ground of duress.

"* * * However, even though Mr. Steen may have been fearful of death or of great bodily harm at the hand of Mr. Bolin, if the evidence establishes that Mr. Steen had a reasonable opportunity to escape but elected not to do so, then the defense of duress fails."

Our analysis indicates that, under the facts presented at trial, the instruction comports with well-recognized definitions of duress. In *Cross*, *supra*, at 483, fn. 2, the court stated that the defense of duress follows a "* * * theme that imminent, immediate danger or threat of danger prevents the actor from exercising his own will, and that there is no *alternative* path to take. Therefore the actor if forced to *choose* between the lesser of two evils." (Emphasis added.) In the case of *sub judice*, the trial court evaluated the evidence presented, including appellant's own testimony, in determining that the "alternative path" potentially available to appellant was an "escape" from the truck. As required, the jury was presented with the ultimate task of determining whether the evidence established that there were alternatives available to appellant or whether Bolin prevented appellant from exercising from exercising his own free will. According to the

instruction, if the jury found that the appellant *chose* the alternative of remaining in the truck, then the defense of duress had to fail. We find no error in this instruction.

Appellant's argument regarding the court's insertion of the word "continuous" is also without merit. Under the facts of this case, in order to set forth the elements of duress, it was necessary for appellant to establish that he was in as great a danger of death or great bodily harm at the time LeFevre was forced into the truck as he was when Bolin and LeFevre exited the truck Pennsylvania. By appellant's admission, he did not try and stop the truck at any time between Wood County, Ohio, and Pennsylvania. When presented with the opportunity, appellant did not drive away without Bolin nor did he try to draw attention to the crimes being committed in the truck. These were not brief, isolated crimes, they occurred in an eighteen-wheel vehicle travelling on the Ohio Turnpike. Accordingly, we find that the court's requirement that appellant show that he was "in immediate and continuing danger" was appropriate in this case.

For the aforestated reasons, we find appellant's fourth assignment of error not well-taken.

In his fifth assignment of error, appellant argues that rape and kidnapping are allied offenses of similar import and that the kidnapping was merged in the rape pursuant to R.C. 2941.25 (A). Appellant was convicted of aiding and abetting a kidnapping in violation of R.C. 2905.01(A) (4) and a rape, in violation of R.C. 2907.02(A) (1). In *State* v. *Donald* (1979), 57 Ohio St. 2d 73, the court recognized that even though the aforementioned offenses are of similar import, R.C. 2941.25(B) permits conviction of two similar offenses if the crimes were: (1) committed separately, or (2) committed with a separate animus as to each.

Evaluating a question identical to the case *sub judice*, the Franklin County Court of Appeals held:

"In determining whether a kidnapping offense in violation of R.C. 2905.01 (A) (4) is merged with an ensuing rape offense in violation of R.C. 2907.02 (A) (1), for purposes of application of R.C. 2941.25, the issue is whether the movement of the victim is substantial or the restraint of liberty is for a significant period of time so as to demonstrate a significant independence of the rape offense." *State* v.

*Moore* (1983), 13 Ohio App. 3d 226, syllabus.

Here, LeFevre was forcibly removed from the TSA where she was found and was driven to a gravel parking area. From the car she was forced to enter the cab and sleeping area of a semi-tractor truck and driven to the Ohio Turnpike where the rape occurred. The elapsed time of asportation, prior to the rape, was greater than thirty minutes. Subsequent to the rape, LeFevre was restrained of her liberty for over two hours as the truck was driven to Pennsylvania. We find this to be a sufficient asportation and restraint of liberty so as to constitute separate conduct by the appellant from aiding in the commission of the rape itself. The same conduct did not comprise the kidnapping and the rape. "Separate conduct was involved in the two offenses sufficiently to permit separate convictions." *Id.* at 228.

Appellant's fifth assignment of error is found not well-taken.

In his sixth assignment of error, appellant asserts that the trial court failed to rule on a motion for acquittal submitted at the close of appellee's case. Appellant urges us to find that such failure to rule was prejudicial and denied him due process of law.

Crim. R. 29(A) provides:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

At the close of appellee's case, appellant moved for dismissal on the grounds of insufficient evidence. No express ruling on the motion was entered; however, directly thereafter, appellant began presenting his defense to the jury. Appellant now argues that, under Crim. R. 29(A), the court improperly reserved its ruling on his motion for acquittal.

Our analysis of Crim. R. 29(A) indicates that appellant has failed to comprehend the limited purpose of this rule. In essence, Crim. R. 29(A) provides that *if* the trial court determines that a motion for acquittal, entered

at the close of the state's case, should be *granted,* the court may not reserve its ruling on such motion and must enter such judgment before the trial continues. On the contrary, if the court determines that such motion should be denied, the trial should proceed to its next phase. In this case, after appellant's motion was entered, the state formally rested in front of the jury, and the defense called its first witness. Clearly, the inference is that the motion had been denied and the trial was allowed to proceed. We do not find that appellant has demonstrated that he was prejudiced or denied due process by the fact that the trial court did not *deny* his motion for acquittal *prior to* the completion of the trial.[2] Further, after an evaluation of the evidence presented, it is clear that, at this stage of the proceedings, no basis existed for the granting of a motion for acquittal.

For the aforestated reasons, we find appellant's sixth assignment of error not well-taken.

In his seventh assignment of error, appellant asserts that the trial court erred in failing to grant his motion for new trial. Appellant's motion for new trial was premised on allegations of prosecutorial misconduct and newly discovered evidence pursuant to Crim. R. 33(A)(2) and (A)(6), respectively. A hearing on the motion for new trial was held August 23, 1988, and the motion was denied in an order entered August 26, 1988.

Appellant's argument is focused on statements made by LeFevre to a Pennsylvania state trooper (Gonzales) following her release from the truck. The statements, had they been available to appellant at trial, would allegedly have allowed appellant to reveal inconsistencies in LeFevre's version of the incident. Appellant asserts that the inconsistencies are material to the issue of guilt because they tend to show a lack of intent and purpose.

It is well-established that in order to prevail on a motion for new trial based on newly discovered evidence, the defendant must meet three requirements:

"* * * (1) he used reasonable diligence in trying to find the evidence; (2) he must present affidavits to inform the trial court of the evidence that would be used if a new trial were to be granted; and (3) the evidence presented must be of such weight that a different result would be reached at the second trial. *State* v. *Shepard* (1983),

13 Ohio App. 3d 117, paragraph one of the syllabus.

By requiring reasonable diligence, the inference is that an attorney will employ reasonable efforts and reasonable foresight in order to procure evidence. *State* v. *Kiraly* (1977), 56 Ohio App. 2d 37, 51. In the case *sub judice,* appellant's motion for new trial states, in relevant part, that discovery requests for all evidence known to appellee and material to the issue of guilt were timely made. Appellant's motion also provided that appellee made numerous responses but did not supply LeFevre's early statements. Appellee does not dispute this portion of appellant's argument; accordingly, we will continue under the premise that reasonable diligence was employed by appellant in seeking this evidence.

The second element of Crim. R. 33(A)(6) requires that affidavits be used to show what new evidence would be presented if a new trial was granted. Although appellant's motion for new trial paraphrased LeFevre's statements to Gonzales, no affidavits were presented in support of his claims. Accordingly, the second requirement of Crim. R. 33(A)(6) was not met.

The third requirement is that the "newly discovered" evidence be influential enough so that a different result would be reached at a second trial. *Id.* Further, the granting of a motion for a new trial upon newly discovered evidence is committed to the wise discretion of the trial court. *State* v. *Williams* (1975), 43 Ohio St. 2d 88, 93. (Citation omitted.) A court of appeals will not reverse unless the trial court has abused this discretion. *Id.* Whether a court's discretion has been abused must be disclosed from an evaluation of the entire record. *State* v. *Lopa* (1917), 96 Ohio St. 410, 411.

We find that, if revealed to the jury, the alleged inconsistencies in LeFevre's statements would not overturn the verdict. For example, LeFevre allegedly told Gonzales that appellant did not do anything to her except "rub her back." At trial, LeFevre testified that appellant encouraged Bolin to kill her and that appellant attempted to pull her into the sleeper with him. Regardless of whether these inconsistencies had been revealed, we do not find that the findings of guilty on charges of aiding and abetting kidnapping and rape would have been different. Accordingly, we find that the trial court did not err or abuse its discretion in refusing to grant a new trial on the basis of newly discovered

evidence.

Appellant also argues that a new trial should have been granted on the basis of prosecutorial misconduct. Appellant contends that appellee's failure to provide copies of LeFevre's early statements warranted a new trial under Crim. R. 33(A)(2).

As an officer of the state, the prosecutor has a duty to assure the defendant a fair trial. *State* v. *Staten* (1984), 14 Ohio App. 3d 78, paragraph one of the syllabus. In conjunction with this duty is the obligation to refrain from knowingly using perjured testimony, to disclose certain evidence favorable to the accused and to correct testimony that he know is false. *Id.* A failure to disclose what he knows to be the truth about the incorrect and misleading testimony of a witness can constitute prosecutorial misconduct. *Id.* at paragraph two of the syllabus. Prosecutorial misconduct is a violation of a defendant's Sixth Amendment right to a fair trial "* * * if there is any reasonable likelihood that the incorrect and misleading testimony could have affected the judgment of the jury." *Id.* at paragraph three of the syllabus.

In the case *sub judice*, we have not been presented with any evidences, in the form of affidavits or otherwise, suggesting that LeFevre's testimony at trial was perjured. Even if we accept appellant's argument that LeFevre's testimony was "inconsistent" with her prior statements, we are unable to conclude that the prosecutor knowingly allowed LeFevre to mislead the jury. In the absence of allegations and/or proof that the prosecutor knew LeFevre was lying, the obligation to "correct" her testimony cannot attach. We again express reservations about whether the Pennsylvania report was truly "favorable" to appellant. It was not exculpatory in nature nor did it cast doubt on appellant's overall involvement in the incident. Accordingly, we do not find that appellant's due process right to a fair trial was violated.

For the aforestated reasons, we find appellant's seventh assignment of error not well-taken.

In his eighth assignment of error, appellant asserts that he was denied his Sixth Amendment right to a fair trial by the ineffective assistance of counsel. Appellant contends that his trial counsel failed to file certain specific discovery requests that would have produced evidence favorable to his defense. Following the standard announced in

*Strickland* v. *Washington* (1984), 466 U.S. 668, the Supreme Court of Ohio has determined that a claim of ineffective assistance of counsel is to be evaluated by a two-prong analysis.

"Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State* v. *Bradley* (1989), 42 Ohio St. 3d 136, paragraph two of the syllabus. (Citations omitted.)

The Bradley court also stated:

"To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.*, paragraph three of the syllabus.

Additionally, "[o]n the issue of counsel's ineffectiveness, the appellant has the burden of proof, since in Ohio a properly licensed attorney is presumably competent." *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 397.

Appellant's sole complaint about counsel's performance is that counsel allegedly failed to specifically request "evidence favorable to the defendant and evidence of mental examinations of LeFevre that were beneficial to the duress defense, and the defense in whole." Appellant, however, has failed to enlighten this court as to what the favorable evidence was nor has he stated how the *victim's* psychological report would be beneficial to his defense. Further, each allegation set forth by appellant is directed at matters dehors the record which were allegedly revealed subsequent to the jury's verdict.

Accordingly, we find that appellant has not demonstrated that trial counsel's performance was below any objective standard of "reasonable representation." Further, we find that appellant has not proved the existence of any "reasonable possibility" that, in the absence of the claimed errors, the result of the trial would have been different.

For the aforestated reasons, we find appellant's eighth assignment of error not well-taken.

On consideration whereof, the court finds that appellant was not prejudiced or prevented

from having a fair trial, and judgment of the Wood County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.

*JUDGMENT AFFIRMED*

GLASSER, J., ABOOD, J., Concur

Prior to his death, Judge John J. Connors, Jr., did participate in the decision-making process of this case.

---

[1] Assignment of error 1, 2, 3 and 4 have been raised by appellant's court-appointed counsel. Appellant filed a brief pro se in which he argues assignments of error 5, 6, 7 and 8.

[2] In a document filed July 5, 1988, entitled "JUDGMENT ENTRY ON JURY TRIAL," the court stated:

"* * * The State then moved for the admission of exhibits and rested its case. Defense counsel moved for a directed verdict and that motion was denied by the Court. The jury then heard evidence adduced on the part of the Defendant and Court was adjourned at 6:30 p.m."