OPINION
Defendant-appellant, Tracy J. Baker, appeals the decision of the Clinton County Court of Common Pleas denying his motion for relief from judgment and his petition for postconviction relief ("PCR"). We affirm the decision of the trial court.
On August 7, 1997, Vincent Doan was found guilty of the kidnapping and aggravated murder of his girlfriend, Clarissa Ann Culberson, a.k.a. Carrie Culberson. Culberson's body was never found. Appellant, Doan's half brother, was indicted on September 15, 1997 on two counts of obstruction of justice, one count of tampering with evidence, and one count of gross abuse of a corpse. The indictment alleged that appellant "did, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of Vincent Doan for a crime or to assist Vincent Doan to benefit from the commission of a crime, provide Vincent Doan with means of avoiding discovery or apprehension, [and] destroy or conceal physical evidence of the crime."
On the evening of August 28, 1996, appellant, an independent truck driver, came home at about 11:00 p.m. and went to bed shortly thereafter. At the Baker home that evening were appellant, Lori Baker, Vicki Watkins, Lori's children, and Vicki's children.
Vicki was awakened at 3:15 a.m. by a knock on the back door which was adjacent to the window of the bedroom in which she was sleeping. She looked through the blinds and noticed it was Doan. Doan entered the Baker home and about one-half hour later, at about 3:45 a.m., Vicki heard appellant and Doan leave through the back door.
Lori was awakened around 3:17 a.m. by the same knock on the back door. When she answered the door, Doan was standing outside barefoot wearing only jeans. Lori testified Doan had blood "smeared" on his hands, arms, and chest. Doan asked for appellant. Lori motioned him to the master bedroom. That bedroom had a separate bathroom. While in the kitchen, Lori heard the shower running and appellant going outside and coming back in. Appellant asked Lori for garbage bags. Doan reappeared from the bathroom at 3:45 a.m., "clean and brushed." Doan and appellant left in appellant's pickup truck with seven garbage bags and appellant's gun.
Lori was awakened at 5:50 a.m. by appellant, who asked her for some bleach and a scrub brush. Appellant instructed Lori to wash the jeans and black T-shirt he had been wearing when he left with Doan. While washing the clothes, Lori noticed some blood on the jeans and what appeared to be bloody spots on the black T-shirt. Lori also noticed several blood spots on appellant's left boot as appellant was wiping them off with a rag. An analysis of the boots later showed human blood on them; however, the blood was too degraded to identify its type.
Lawrence Baker, the father of appellant and Doan, owns a junkyard on Hunt Road in Clermont County, Ohio. On the junkyard property there is a body of water (the "pond"). On the afternoon of September 3, 1996, Blanchester police, a bloodhound and cadaver dog searched the junkyard. Lawrence Baker was cooperative and allowed the police access to any part of the junkyard. Both dogs showed interest in the area around the pond. Despite the reaction of both dogs, Blanchester Police Chief Richard Peyton declined an offer from the Clermont County Sheriff's Office to help guard the property. The property was not secured at all for the night.
The following day, the pond was drained but nothing was found in it. However, there were footprints in the mud. From the footprints, it appeared that someone had entered the pond from a path that led to it, continued to the center of the pond, and returned up the path.
On October 10, 1996, four search warrants were executed: one on appellant, one on his house, one on his pickup truck, and one on his Peterbilt semi tractor-trailer. A search of the tractor-trailer's cab and tool box revealed a Peterbilt jacket and a pair of boots with blood stains on them. The search of appellant's house yielded no incriminating evidence. Bloodstains were found on a quilt and a pillowcase, but the quilt stains were consistent with appellant's DNA, and the pillowcase's stains did not match the DNA of appellant, Doan, or Culberson.
Appellant was dating Shannon Hodson in July 1997. Shannon was under indictment for assisting appellant in fleeing from the state of Ohio to the state of Kentucky, where appellant was eventually arrested. Shannon would frequently drive appellant's car and was, in fact, driving his car when she was arrested in December 1997. After being given Miranda
warnings, Shannon told Detective Brian Edwards of the Clinton County Sheriff's Office to look in the trunk of the car. The trunk was searched and a number of items, including two flannel sheets, a nylon rope, and the trunk's carpet, were sent for testing to the Miami Valley Regional Crime Laboratory. Two hairs found on the sheets were found to be consistent with hair taken from Culberson prior to her disappearance.
On September 21, 1997, the Florence, Kentucky police received teletype information from the Clinton County Sheriff's Office to look out for appellant's tractor trailer at a truck stop in Florence. The following day at about 4:20 a.m., Sergeant Thomas Szurlinski noticed a man, later identified as appellant, walking down "the side of Kentucky 18." Upon noticing another police car, appellant stopped, hesitated, and eventually started running toward Interstate Highway 75. As two officers were chasing him on foot, appellant crossed the ramp to I-75 and was in a grassy median between the ramp and interstate when he stopped running and knelt down. Appellant offered no resistance to arrest.[1]
On June 4, 1998, a jury found appellant guilty of two counts of obstruction of justice and one count of tampering with evidence. The trial court merged the two counts of obstruction of justice and sentenced appellant to a four-year term of imprisonment on the obstruction charge and to a consecutive four-year term of imprisonment on the tampering with evidence charge. The jury did not find appellant guilty of gross abuse of a corpse.
On September 8, 1998, appellant filed a motion for reversal of guilty verdict or, in the alternative, a motion for new trial. On May 25, 1999, appellant filed a PCR petition. On August 7, 2000, the court overruled the PCR petition, and on August 8, 2000, the court denied the motion for new trial. The PCR petition and the motion for new trial were both denied without a hearing. This appeal follows, in which appellant raises two assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DID NOT GRANT HIM A HEARING FOR BOTH THE MOTION FOR NEW TRIAL AND THE PETITION FOR POST CONVICTION RELIEF.
 I. Appellant's Motion for New Trial
The decision to grant or deny a motion for new trial is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Schibel (1990),55 Ohio St.3d 71, syllabus. The term "abuse of discretion" requires more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. State v. Clark (1994),71 Ohio St.3d 466, 470. Likewise, "the decision on whether the motion warrants a hearing also lies within the trial court's discretion." Statev. Smith (1986), 30 Ohio App.3d 138, 139.
Appellant based his motion for new trial on two premises: prosecutorial misconduct under Crim.R. 33(A)(2) and newly-discovered evidence under Crim.R. 33(A)(6). Specifically, appellant contends that evidence requested under Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, was not disclosed to appellant. Appellant argues that nondisclosure of the evidence constituted prosecutorial misconduct under Crim.R. 33(A)(2) and once discovered by the defense, that information was newly-discovered evidence under Crim.R. 33(A)(6).
In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady,373 U.S. at 87, 83 S.Ct. at 1196-1197. In order to establish a Brady
violation, three elements must be demonstrated: first, that the prosecution failed to disclose evidence upon request; second, that the evidence was favorable to the defense; and third, that the evidence was material. See Moore v. Illinois (1972), 408 U.S. 786, 92 S.Ct. 2562.
On appeal, appellant asserts that when a defendant produces, through affidavits and other documents, sufficient evidence to justify a new trial based on prosecutorial misconduct and newly-discovered evidence, "the court is required to conduct a hearing to determine the necessity of an evidentiary hearing on the motion."
1. Motion for New Trial Based on Newly Discovered Evidence, Crim.R. 33(A)(6)
Crim.R. 33(A) states that a "new trial may be granted on motion of the defendant for any of the following causes affecting materially hissubstantial rights: * * * (6) when new evidence material to the defense is discovered, which the defendant could not with reasonable diligencehave discovered and produced at trial. * * *." (Emphasis added.) Appellant contends that because the requested evidence under Brady was not turned over to him, and because it could not, in the exercise of due diligence, have been discovered before trial, it is therefore newly-discovered evidence under Crim.R. 33(A)(6).
To prevail on a motion for a new trial based upon the ground of newly-discovered evidence pursuant to Crim.R. 33(A)(6), the defendant must establish that the new evidence:
 (1) is of such weight that it creates a strong probability that a different result would be reached at the second trial; (2) has been discovered since trial; (3) could not in the exercise of due diligence have been discovered before trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence. State v. Hawkins
(1993), 66 Ohio St.3d 339, 350, quoting State v. Petro (1947), 148 Ohio St. 505, syllabus.
 Appellant maintains that the following items, which were in the state's possession and not disclosed to the defense, are newly-discovered evidence that warrants a new trial: (1) summaries and notes made by Det. Edwards in a November 12, 1996, meeting between Det. Edwards, the prosecutor, and Lori, which state, "Lori Baker did not see any blood on Vincent Doan;" (2) notes made by Det. Edwards in a November 7, 1996, meeting where remarks were made by the prosecutor to assure Lori and Vicky that they would not be prosecuted unless they lied to him; (3) a September 8, 1996, police report wherein two witnesses, Christa Pendleton and Karrie Donovan, describe a woman and a man fitting the description of Culberson and Doan; (4) and documentation that Vicky had been hypnotized to refresh her recollection.
First, appellant asserts that November 12, 1996 notes and summaries which state "Lori Baker did not see any blood on Vincent Doan" are newly-discovered evidence that merits a new trial. Appellant contends that Lori's statements to Det. Edwards contradict her testimony at trial, where Lori testified "Doan had blood smeared on his hands, arms, and chest." Appellant also contends the notes and summaries contradict Det. Edwards' testimony. At Doan's trial, when Det. Edwards was asked if "anything was different when [Lori] testified here than [what] you have been told by her in the past," he answered, "nothing I can think of." Thus, appellant contends the notes and summaries could have been used to cross-examine both Det. Edwards and Lori. Appellant therefore contends the notes are material to guilt or punishment. Appellant further argues that since the notes and summaries could not be discovered before trial, they are new evidence.
However, the fact that Lori had previously lied had been discovered by appellant, before appellant's trial. Appellant already had information available to him with which he could impeach Lori's and Det. Edwards' testimony. Appellant's counsel admits reading Lori's testimony in "the transcript from the [Doan] trial." Lori admitted to lying in the Doan trial about Doan being "covered with blood." For new evidence not to be deemed merely cumulative it must contain "additional elements which contribute significantly" to appellant's case. State v. Barber (1982),3 Ohio App.3d 445, 447. The notes and summaries do not contain additional elements which contribute significantly to appellant's case since appellant's trial counsel was able to use portions of Lori's trial testimony from the Doan case to impeach her. Clearly, the November 12, 1996 notes and summaries are merely cumulative evidence and would simply further impeach or contradict the evidence offered by Lori. Therefore, Det. Edwards' notes and summaries can hardly be considered new evidence that "would disclose a strong probability that it will change the result if a new trial is granted," as required by Petro. Barber at 448.
Second, appellant asserts that the November 7, 1996 notes made by Det. Edwards detailing remarks made by the prosecutor assuring Lori and Vicky that they would not be prosecuted unless they lied to him is newly-discovered evidence that merits a new trial. Appellant further contends that during her testimony at trial, Lori denied that the prosecutor assured her and Vicky that they would not be prosecuted unless they lied to him. In actuality, when Lori was asked if the prosecutors "told you that as long as you testified to the truth you would not be prosecuted," Lori answered in the affirmative. Consequently, appellant's trial counsel also had this information available to him before trial. Therefore, neither can the November 7, 1996 notes be considered new evidence that suggests a strong probability that the result of the proceedings would change if a new trial was granted.
Third, appellant contends that the police reports, where Christa Pendleton and Karrie Donovan stated that they saw a man and a woman walking along the road fitting a description of Doan and Culberson are newly-discovered evidence that is favorable to appellant and is material to guilt or punishment. In their reports to police, on the very night and time Lori claimed to have seen Doan and Baker at her house, Christa Pendleton and Karrie Donovan describe the man and woman they observed that night as "a woman wearing a dark, long sleeved shirt, white colored shorts and long brown hair, and a man wearing a baseball hat and a black shirt." Pendleton estimated the man was "5'11" tall and weighed 175 to 180 pounds." Appellant argues that this description matches the last report of what Culberson was wearing and also matches a general description of Doan. Appellant contends that even though the statement was not a positive identification of Culberson and Doan, a hearing to determine whether this evidence warrants a new trial is required.
Appellant undermines his own legal argument when he states in his appellate brief that the police reports were available "through the Public Records Act [and Lawrence Baker's attorney, Paris Ellis] was able to obtain the information." Appellant's trial counsel, like Lawrence Baker's attorney, could have also obtained this information through due diligence. The reasonable diligence requirement of Crim.R. 33(A)(6) "infers that an attorney will use reasonable efforts and reasonable foresight to procure evidence." State v. Kiraly (1977),56 Ohio App.2d 37, 51-54.
More importantly, the police reports are not newly-discovered evidence that merits a new trial because this "new evidence" does not raise a reasonable probability that, had the evidence been disclosed to or discovered by the defense, the result of the trial would have been different.
Fourth, appellant insists that documentation that Vicky had been hypnotized to refresh her recollection constitutes newly-discovered evidence that entitles appellant to a new trial. Appellant contends the statements Vicky made while under hypnosis are exculpatory because they are inconsistent with objective facts, such as the placement of Doan's tattoo.
We find the statements made by Vicky while under hypnosis were not significantly different from the statements she made during prehypnosis, and the location of the tattoo on Doan's shoulder was insignificant to the trial of appellant and Doan. Vicky identified Doan "from his body and hair," not by his tattoo.
Although appellant believes all of the proposed new evidence is material to guilt or punishment, the "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." U.S. v. Agurs (1976), 427 U.S. 104, 109-110,96 S.Ct. 2392, 2400. The proper standard of materiality is "that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. * * * If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." Agurs,427 U.S. at 112-113, 96 S.Ct. at 2402.
We thus find that none of the proposed new evidence is sufficient to satisfy the threshold of materiality under Brady because it does not create a reasonable doubt that did not otherwise exist. Since none of the proposed new evidence is sufficient to satisfy the requirements of Brady, it also fails to meet the requirements of Petro for the granting of a new trial. Petro also requires a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Accordingly, we find the trial court did not act unreasonably, arbitrarily, or unconscionably in denying appellant's Crim.R. 33(A)(6) portion of his motion for new trial without a hearing.
2. Motion for New Trial Based on Prosecutorial Misconduct, Crim.R. 33(A)(2)
Crim.R. 33(A) states that a "new trial may be granted on motion of the defendant for any of the following causes affecting materially hissubstantial rights: * * * (2) misconduct of the jury, prosecuting attorney or the witnesses of the state." (Emphasis added.)
We note at the outset that appellant admits that the Crim.R. 33(A)(2) portion of his motion for new trial was not timely filed. However, appellant argues he was unavoidably prevented from filing this motion and maintains that due process requires a hearing as to whether appellant was unavoidably delayed in filing his motion for new trial.
Because a failure to disclose material exculpatory evidence violates a defendant's Fourteenth Amendment right to due process, an appellate court reviewing a trial court's resolution of a motion for a new trial claiming a Brady violation utilizes a due process analysis rather than an abuse of discretion analysis. State v. Johnston (1988), 39 Ohio St.3d 48, 59. We must therefore determine whether "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or punishment." Brady,373 U.S. at 87-88, 83 S.Ct. at 1197.
Thus, the key issue in a case where exculpatory evidence is alleged to have been withheld is "whether the evidence is material." Johnston,39 Ohio St.3d at 60. The standard of materiality applies regardless of whether the evidence was specifically, generally, or not at all requested by the defense. United States v. Bagley (1985), 473 U.S. 667, 682,105 S.Ct. 3375, 3383-3384. Evidence shall be deemed material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id.,473 U.S. at 682, 105 S.Ct. at 3384. Therefore, unless the omission deprived the defendant of a fair trial, "there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose." Agurs, 427 U.S. at 108,96 S.Ct. at 2399; see, also, Brady, 373 U.S. at 87, 83 S.Ct. at 1196-1197.
Appellant's motion for new trial under Crim.R. 33(A)(2) claims that a new trial is merited based upon the prosecution's failure to disclose the same four items of evidence that he argued were "newly-discovered evidence" under his Crim.R. 33(A)(6) portion of his motion.
We find the defendant was not deprived of a fair trial because, as stated above, none of this evidence was material to guilt or punishment. The evidence was not material because there was no reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Since the requested evidence was not material to guilt or punishment, there was no need for a hearing on the Crim.R. 33(A)(2) portion of appellant's motion for new trial. Therefore, we find the trial court did not act unreasonably, arbitrarily, or unconscionably in denying appellant's Crim.R. 33(A)(2) portion of his motion for new trial without a hearing.
II. Appellant's PCR Petition
Appellant argued in his PCR petition that the suppression of exculpatory evidence, material to appellant's guilt, renders the judgment against appellant void or voidable. On appeal, appellant contends the trial court erred in denying his PCR petition without first conducting an evidentiary hearing.
PCR petitions are governed by R.C. 2953.21, which states in pertaining part:
 (A)(1) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.
 A postconviction proceeding is not an appeal of a criminal conviction, but a collateral civil attack on a criminal judgment. State v. Steffen (1994), 70 Ohio St.3d 399, 410. Under R.C. 2953.21, a hearing is not automatically granted upon the filing of a PCR petition. State v. Strutton (1988), 62 Ohio App.3d 248, 251. Before granting a hearing, the trial court must determine, upon consideration of the petition, the supporting affidavits, all the files and records pertaining to the underlying proceedings, and any supporting evidence, whether the petitioner has "set forth sufficient operative facts to establish substantive grounds for relief." State v. Calhoun
(1999), 86 Ohio St.3d 279, paragraph two of the syllabus; R.C. 2953.21(C). The petitioner bears the initial burden to provide evidence containing sufficient operative facts to demonstrate a cognizable claim of constitutional error. State v. Kapper
(1983), 5 Ohio St.3d 36, 37-38, certiorari denied (1983), 464 U.S. 856, 104 S.Ct. 174. Moreover, before a hearing is warranted, the petitioner must demonstrate that the claimed "errors resulted in prejudice." Calhoun at 283. The decision to grant the petitioner an evidentiary hearing is left to the sound discretion of the trial court. Calhoun at 284.
Appellant provided the trial court with approximately fourteen affidavits and eleven exhibits to support his PCR petition, which set forth five claims for relief. All of appellant's claims alleged that the state improperly failed to turn over to the defense various material evidence that appellant alleges were both relevant and exculpatory. Such evidence includes (1) Det. Edwards' notes regarding statements made by Lori; (2) the Christa Pendleton and Karrie Donovan police reports; and (3) Vicky's hypnosis. Appellant asserts that the state's failure to turn over such evidence violated his constitutional rights under Brady.
A trial court does not automatically have to accept as true any affidavits submitted in a PCR petition, but may weigh the credibility of the PCR affidavits. State v. McCoy (Mar. 2, 1998), Clermont App. Nos. CA97-03-027 and CA97-03-032, unreported, at 18, following State v. Moore
(1994), 99 Ohio App.3d 748, 751-752. As already noted, generally, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good or bad faith of the prosecution."Brady, 373 U.S. at 87, 83 S.Ct. at 1196-1197. The evidence is material if "there is a reasonable probability that, had it been disclosed to the defense, the result of the proceedings would have been different."Bagley, 473 U.S. at 682, 105 S.Ct. at 3383-3384.
We have previously found that there is no reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different. For that reason, the evidence was not material to guilt or punishment. We therefore find that the trial court did not err in denying appellant's PCR petition without a hearing. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DENIED HIS MOTION FOR A NEW TRIAL AND HIS PETITION FOR POST-CONVICTION RELIEF.
 Appellant's entire argument under this assignment of error consists of the following:
 Appellant hereby incorporates all the arguments and facts in his First Assignment of Error, but, for the very reasons contained in that Assignment of Error, the trial court should have granted his Motion for New Trial and Petition for Post-Conviction Relief outright. The Motions, along with the evidentiary material and affidavits all indicate that Baker's due process rights were violated, that there was newly discovered evidence, and that he received the ineffective assistance of counsel. The cases and statutes cited in the First Assignment of Error require that Baker receive a new trial, even without an evidentiary hearing.
 App.R. 16(A)(7) requires that an appellant's brief contain an argument with the contentions of the appellant with respect to each issue presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which the appellant relies. This court may disregard an assignment of error presented for review if a party fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A). App.R. 12(A)(2); see, also, State v. Watson (1998), 126 Ohio App.3d 316, 321.
For the first time in his brief, appellant argues in the second assignment of error that he received ineffective assistance of counsel. Appellant's new argument is raised improperly because it is submitted without argument. Therefore, we will not consider appellant's ineffective assistance of counsel argument. Further, the issues of appellant's due process rights and newly discovered evidence were fully addressed in our resolution of appellant's first assignments of error. As appellant has presented no additional legal authority in support of this assignment of error, we will not consider it. The second assignment of error is overruled.
YOUNG, P.J., and POWELL, J., concur.
[1] These are the facts necessary for a review of this case. For a more detailed summary, see State v. Baker (2000),137 Ohio App.3d 628.