The STATE of Ohio, Appellee,

v.

LORDI, Appellant.

[Cite as *State v. Lordi,* 149 Ohio App.3d 627, 2002-Ohio-5517.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 01 CA 164.

Decided Oct. 7, 2002.

Paul J. Gains, Mahoning County Prosecuting Attorney, and Jan T. O'Halloran, Assistant Prosecuting Attorney; and Paul M. Nick, Special Assistant Prosecutor, Ohio Ethics Commission, for appellee.

Kravitz & Kravitz, Max Kravitz and Kort Gatterdam; Wolman, Genshaft & Gellman and Susan Gellman, for appellant.

DeGenaro, Judge.

{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Appellant Frank Lordi appeals from the judgment of the

Mahoning County Court of Common Pleas dismissing his untimely petition for post-conviction relief, his motion seeking to declare the post-conviction relief statute unconstitutional, and his second motion for a new trial. The issues we must resolve are (1) whether Lordi was unavoidably prevented from discovering the information upon which he bases his untimely petition for post-conviction relief, and (2) whether R.C. 2953.23 impermissibly trumps either United States and Ohio Supreme Court case law or the United States Constitution. Because we answer these questions in the negative, the judgment of the trial court is affirmed.

{¶ 2} In 1994, Lordi was a member of Democrats for Change, a grassroots effort to change the leadership of the Democratic Party in Mahoning County by electing its own party precinct members. Lordi's role in Democrats for Change was to identify people in the community who would run for precinct person, then telephone and interview those people.

{¶ 3} Joseph Veneroso and Fred DeBonis were two individuals who assisted the Democrats for Change. Both worked for the Mahoning County Building Inspector. Lordi directed both Veneroso and DeBonis to pick up petitions for the Democrats for Change on county time and to do whatever the people on the committee asked them to do. Lordi told them that if anyone questioned them, they should tell them to call Lordi and he would take care of the problem. DeBonis stated that generally when he mentioned to his boss, Steve Berry, that he and Veneroso needed to pick up petitions, his boss told the dispatcher not to give them any calls that day.

{¶ 4} At the height of the election, Veneroso testified that he was at the Democrats for Change office nearly every day. John Gillespie, a Democrats for Change volunteer, testified that he saw both Veneroso and DeBonis during normal business hours at the Democrats for Change office. According to Gillespie, on one occasion, he called Lordi and asked him to find someone to pick up petitions. Veneroso ultimately showed up at Democrats for Change with the required petitions. On the last day petitions for Democrats for Change were to be in, DeBonis testified that he and Veneroso used a county-owned vehicle to travel to an outlying western area of the county to pick up petitions at Lordi's request.

{¶ 5} On April 1, 1998, Lordi was indicted on eighteen counts. Pertinent to this post-conviction appeal, the jury found Lordi guilty on one count of theft in office, one count of unlawful interest in a public contract, and two counts of conflict of interest. Lordi was convicted and sentenced to eighteen months' imprisonment and ordered to pay fines on all four charges.

{¶ 6} Lordi filed a timely appeal, and this court affirmed his convictions. *State v. Lordi* (2000), 140 Ohio App.3d 561, 748 N.E.2d 566. His timely

application to reopen his direct appeal was also denied. *State v. Lordi* (Feb. 23, 2001), 7th Dist. Nos. 99 CA 62 and 99 CA 247. On June 14, 2001, Lordi filed a petition for post-conviction relief related to his conviction for theft in office, followed by an amended petition. Lordi also filed to hold R.C. 2953.23(A)(2) unconstitutional and a motion for new trial pursuant to Crim.R. 33(A)(2) and (6) and (B).

{¶ 7} Lordi based these motions upon the assertion that the special prosecutor in his case withheld exculpatory evidence that may have led to his acquittal on the theft-in-office charge. Specifically, Lordi claims that on March 23, 2001, Berry testified in a deposition in an unrelated federal proceeding that Special Prosecutor David Betras interviewed him prior to the trial in the present case. During that interview, Berry allegedly told Betras that he was unaware of Veneroso and DeBonis doing private political work for Lordi while on county time and that Lordi never requested that he allow them to do such work on county time. Berry, however, did not testify at Lordi's trial.

{¶ 8} In contrast, Veneroso and DeBonis testified at trial that Berry was aware that they were doing work for Lordi while being paid as public employees. DeBonis further testified that Berry participated in the wrongdoing by instructing other public employees not to give Veneroso and DeBonis public assignments on the day they were to pick up petitions for the private political work. DeBonis also testified that Lordi called Berry to tell him to make sure that DeBonis and Veneroso did not get any public employment work on that day. Because of these inconsistencies, Lordi claims that Betras should have handed over these alleged statements because they were exculpatory in nature.

{¶ 9} The trial court denied all of Lordi's pleadings but failed to issue findings of fact and conclusions of law. Upon Lordi's motion, the trial court filed same. Lordi timely appealed from the August 8, 2001 judgment entry but later moved to amend the notice of appeal to include the findings of fact and conclusions of law. This court denied that request, explaining that findings of fact and conclusions of law are required only when a court denies a timely initial post-conviction petition. In response, Lordi filed a second notice of appeal from the trial court's issuance of findings of fact and conclusions of law. This court consolidated the two appeals.

{¶ 10} As his first assignment of error, Lordi asserts:

{¶ 11} "The trial court erred in dismissing Lordi's post-conviction and new trial claims contrary to the Due Process Clause of the Ohio and United States Constitution."

{¶ 12} Although the burden of proof required of a defendant requesting a new trial is much akin to the burden placed on a defendant seeking to file an

untimely petition for post-conviction relief, Lordi's claims will be addressed separately. Turning to Lordi's post-conviction petition, the trial court initially dismissed it without explanation, apparently because it was untimely filed. Lordi's trial transcript was filed in his direct appeal on May 25, 1999. Lordi did not petition for post-conviction relief until June 14, 2001. Clearly, Lordi filed his petition for post-conviction relief more than one hundred eighty days after his trial transcript was filed in the court of appeals and did not meet the deadline provided by R.C. 2953.21(A)(2).

{¶ 13} Thus, we must determine whether Lordi has demonstrated that his petition for post-conviction relief should have been entertained under R.C. 2953.23. See *State v. Hill* (1998), 129 Ohio App.3d 658, 661, 718 N.E.2d 978. R.C. 2953.23 makes a limited exception for review of a petition for post-conviction relief that is not timely filed and states:

{¶ 14} "(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:

{¶ 15} "(1) Either of the following applies:

{¶ 16} "(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

{¶ 17} "(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

{¶ 18} "(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence." Id.

{¶ 19} Lordi claims that he was unavoidably prevented from discovering the alleged misconduct of Betras because Berry did not give his deposition until March 23, 2001. Lordi further asserts that there is no indication that he either possessed this information or he would have been able to obtain this information. However, the record indicates that Lordi was put on notice that Berry would have testified in that manner by the testimony adduced at trial. Significantly, it

also appears from Berry's deposition testimony that Lordi became aware sometime before the deposition was actually taken, but sometime after his trial, what responses Berry would give in his deposition.

{¶ 20} More specifically, Veneroso testified at trial that there was a great deal of conflict in his and Berry's relationship. He further testified that Berry had "set him up" and was well aware that bad things were going on in the office. Similarly, DeBonis explained at trial that Berry had sued Veneroso. He also agreed with Veneroso's statement that the two had a "terrible relationship." Finally, it was alluded to at trial that Berry at one point stated that he thought the two men were off the clock when they were performing other tasks.

{¶ 21} This evidence alone suggests that any statements given by Berry could potentially conflict with the testimony of either Veneroso or DeBonis. There was no reason why Lordi could not have deposed Berry himself or called him as a witness. After hearing testimony from Veneroso, one of the star prosecution witnesses, that he and the boss who was purportedly covering for him had a tumultuous relationship, it seems that the next logical step would be to question Berry about that relationship. Therefore, we conclude that Lordi was not unavoidably prevented from further investigating and discovering this information on his own.

{¶ 22} In fact, Berry's deposition indicates that Lordi apparently had some investigation regarding Berry's possible testimony after the conclusion of Lordi's trial and before Berry was deposed. In his deposition, Berry states that he had spoken on the phone with Lordi at least two times on the telephone and once in person at Lordi's request. Berry further testified that Lordi repeatedly asked for a signed affidavit from Berry describing his conversation with Betras, presumably to support either his motion for a new trial or his postconviction petition. Berry then admitted that he agreed to testify for Lordi by way of a signed affidavit in exchange for Lordi's testimony at his trial.

{¶ 23} In further testimony fatal to Lordi, Berry admitted that he knew Veneroso and DeBonis were protected by Lordi and the commissioners and was instructed not to discipline them for their conduct or else his job would be placed in jeopardy. Last, Berry testified that Veneroso had informed Berry that he was untouchable; he did not work for Berry, he worked for the commissioners.

{¶ 24} In light of this evidence, it appears that Lordi was aware of Berry's testimony well before his statements were given at the deposition. Thus, Lordi has failed to satisfy the first requirement for filing an untimely petition for postconviction relief, namely R.C. 2953.23(A)(1).

{¶ 25} We now turn to Lordi's motion for a new trial based upon newly discovered evidence, Crim.R. 33(A)(6), and prosecutorial misconduct, Crim.R.

33(A)(2). As Lordi failed to seek a new trial based on newly discovered evidence within one hundred twenty days of the jury's verdict, he had to obtain leave from the trial court to do so. Crim.R. 33(B). "From the language of the rule, it is clear that a two-step process is anticipated when the motion is made outside the period during which motions for a new trial are permitted as a matter of course." *State v. Dawson* (July 14, 1999), 9th Dist. No. 19179, at 3, 1999 WL 492600. Leave must be granted before the merits are reached.

{¶ 26} To obtain leave, unavoidable delay must be proved by clear and convincing evidence. Crim.R. 33(B). "[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *State v. Walden* (1984), 19 Ohio App.3d 141, 146, 19 OBR 230, 483 N.E.2d 859. Clear and convincing proof is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt: it " 'produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus. Thus, in order for a trial court to properly reach the merits of an untimely motion for a new trial, clear and convincing proof requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial. See *State v. Kiraly* (1977), 56 Ohio App.2d 37, 55, 10 O.O.3d 53, 381 N.E.2d 649; *State v. Dodrill* (Oct. 28, 1987), 9th Dist. No. 4204, 1987 WL 19466.

{¶ 27} As this is the question before us, we now turn to our standard of review. "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, supra, at 74, 564 N.E.2d 54. Where there is competent and credible evidence supporting the trial court's decision, the appellate court should not substitute its judgment for that of the trial court. Id.

{¶ 28} In the present case, Lordi justifies his motion for leave to seek a new trial using the same argument asserted in his untimely petition for post-conviction relief. He simply states that he was not made aware of Betras's alleged misconduct until after the deposition of Berry was taken in the federal case. However, as previously discussed, the deposition offered by Lordi serves to prove only that he was made aware of the alleged misconduct sometime before the deposition was taken.

{¶ 29} Consequently, Lordi failed to present the trial court with clear and convincing evidence that he had no knowledge of the existence of the ground supporting his motion for a new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence. Because filing an untimely motion for a new trial is a two-step process, with the first step requiring a defendant to receive leave to file the motion, this court need not proceed to the merits of Lordi's motion because the trial court properly denied leave.

{¶ 30} In conclusion, Lordi's first assignment of error is without merit because he failed to meet the burdens required for both his requests. He simply did not prove that he was unavoidably prevented from discovering the information upon which he bases his claims.

{¶ 31} For his second assignment of error, Lordi asserts:

{¶ 32} "The trial court erred in failing to find [R.C.] 2953.23(A) unconstitutional, as applied to appellant, pursuant to the United States Constitution and precedent from the United States Supreme Court."

{¶ 33} Lordi argues that, although R.C. 2953.23(A)(2) is labeled as a jurisdictional requirement, in reality, this provision requires a court to address the merits of a claim before jurisdiction is established. Specifically, the challenged portion of the statute requires that a petitioner show by clear and convincing evidence that, but for constitutional error at trial, no reasonable fact-finder would have found the petitioner guilty of the offense of which the petitioner was convicted. Lordi asserts that Ohio law would deny relief that is afforded by the federal Constitution. In essence, Lordi has claimed that R.C. 2953.23(A)(2) violates the Supremacy Clause.

{¶ 34} However, we conclude that Lordi does not have standing to challenge that portion of the statute since his claim was dismissed based upon his failure to meet the first prong of the jurisdictional test, R.C. 2953.23(A)(1). Because Lordi failed to establish that he was unavoidably prevented from discovering the information obtained from Berry's deposition, the trial court was not required to apply the second prong of the jurisdictional test to Lordi.

{¶ 35} The Ohio Supreme Court has held: "The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." *Palazzi v. Estate of Gardner* (1987), 32 Ohio St.3d 169, 512 N.E.2d 971, syllabus. "Constitutional questions will not be decided until the necessity for a decision arises on the record before the court." *Christensen v. Bd. of Commrs. on Grievances & Discipline* (1991), 61 Ohio St.3d 534, 535, 575 N.E.2d 790, citing

*State ex rel. Herbert v. Ferguson* (1944), 142 Ohio St. 496, 27 O.O. 415, 52 N.E.2d 980, paragraph two of the syllabus. See, also, *State v. Shearn* (Apr. 13, 1998), 5th Dist. Nos. 97–CA–10, 97–CA–12, 97–CA–19 and 97–CA–25, 1998 WL 517699; *State v. Somerlot* (Jan. 23, 1998), Lucas C.P. No. 96–CR–441, 1998 WL 34578.

{¶ 36}   Because the portion of the statute Lordi challenges, R.C. 2953.23(A)(2), was never applied to his untimely post-conviction petition, he is not a member of the class against whom the statute has been unconstitutionally applied.   Lordi's claim was barred solely because he could not prove, as required by R.C. 2953.23(A)(1), that he was unavoidably prevented from discovering the facts upon which he based his petition.   Lordi simply filed his petition too late.   Because the United States Supreme Court has determined that a state is free to impose proper procedural bars in order to restrict repeated returns to state court, and Ohio courts have concluded that time limits are proper procedural bars the legislature may impose on post-conviction relief, Lordi can present no further challenge to the constitutionality of the statute.   *Slack v. McDaniel* (2000), 529 U.S. 473, 489, 120 S.Ct. 1595, 146 L.Ed.2d 542; *State v. Bird* (2000), 138 Ohio App.3d 400, 407, 741 N.E.2d 560.   Thus, his second assignment of error is meritless.

{¶ 37}   In conclusion, we determine that Lordi's two assignments of error are both without merit.   Lordi failed to meet the standards for either untimely post-conviction review or a new trial because he was not unavoidably prevented from discovering the statements allegedly made by Berry to Betras.   Further, he lacked the requisite standing to challenge the constitutionality of R.C. 2953.23(A)(2) because that was not the basis for the trial court's order dismissing his untimely post-conviction petition.   Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

GWIN and READER, JJ., concur.

W. SCOTT GWIN, J., of the Fifth Appellate District, sitting by assignment.

W. DON READER, J., retired, of the Fifth Appellate District, sitting by assignment.