# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SCOTT A. GROUP,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 18 MA 0098

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 97 CR 66

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Judges and Christine Mayle, Judge of the Sixth
District Court of Appeals, Sitting by Assignment.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor and *Atty. Ralph M. Rivera*, Assistant
Prosecuting Attorney, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503,
for Plaintiff-Appellee

*Atty. Daniela Paez*, Ulmer & Berne LLP, 1660 West 2nd Street, Suite 1100, Cleveland,
Ohio 44113 and

*Atty. Sarah Kostick*, 33 N. Stone Avenue, 21st Floor, Tucson, Arizona 85701, for
Defendant-Appellant.

Dated:  September 18, 2019

---

**WAITE, P.J.**

{¶1}   Appellant Scott A. Group appeals an August 10, 2018 Mahoning County Court of Common Pleas judgment entry denying his request for leave to file a motion for a new trial.  Appellant argues the trial court improperly disregarded an affidavit from his federal public defender which demonstrated that he was unavoidably prevented from discovering the evidence on which he bases his motion for a new trial.  Appellant also argues that, although the court did not reach the merits of his motion for a new trial, evidence attached to the motion establishes that he received ineffective assistance of counsel.  For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

### Factual and Procedural History

{¶2}   This appeal arises from a 1997 murder and robbery carried out by Appellant.  Appellant worked for Ohio Wine Imports Company ("Ohio Wine").  *State v. Group,* 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 4 ("*Group I*").  In early January of 1997, Ohio Wine's manager apparently discovered that Appellant's cash receipts were $1,300 short of the invoiced amounts.  As a result, Appellant visited the Downtown Bar, owned by Robert and Sandra Lozier, to review their invoices and compare them to his receipts.  On January 17, 1997, Appellant visited the Downtown Bar a second time and asked to speak with the Loziers about the invoices, however, the Loziers were unavailable.

**{¶3}** The next morning, Appellant returned as the Loziers prepared to open for the day. *Id.* at ¶ 7. Sandra had just opened the safe and removed five bags that collectively contained approximately $1,200 to $1,300 in cash. Sandra set the bags on a desk and began to count the money when she heard a knock on the door. Sandra looked through a peephole in the door and saw Appellant. Appellant was not dressed in his usual work clothes, but she allowed him inside when he asked to see the invoices again. Sandra counted the money while Appellant looked through the invoices. At one point, he asked to use the restroom. He exited the restroom with a gun in his hand. He forced Sandra and Robert into the restroom and ordered them to face the wall. Appellant shot Robert in the head and Sandra in the back of the neck and temple. Sandra lost consciousness but awoke at some point to find Robert dead. Appellant took the money that Sandra had been counting and left.

**{¶4}** Sandra attempted to write "Ohio Wine" on the floor using her blood, to no avail. She was able to reach a phone and call 911. She told the operator that she and her husband had been shot by "the Ohio Wine Man." Although she was very familiar with Appellant, who was their regular delivery man, she did not know him by name. *Id.* at ¶ 12.

**{¶5}** Investigators located Appellant and interviewed him at the police station. *Id.* at ¶ 19. Captain Robert Kane and Detective Sargent Daryl Martin noticed blood on Appellant's shoe. Appellant explained that he had cut his finger earlier in the day. The officers observed only a "superficial old cut" on his finger. The blood on Appellant's shoe was sent for DNA testing.

**{¶6}** Appellant confided in a friend that he was concerned about the gunshot residue test. He claimed that he had been shooting at a gun range with another friend

the day before the gunshot residue test was completed. Appellant later changed his story and told the friend that he had been shooting at the range with his foster son, who had denied being at the range with Appellant. Appellant asked another friend to tell police that he had been at the range with Appellant the day before the shooting. Both friends contacted investigators and gave them this information. Two inmates who were jailed with Appellant during the time period told investigators that Appellant had offered them money in exchange for firebombing Sandra's house and to intimidate various witnesses.

**{¶7}** Appellant was originally indicted for the aggravated murder of Robert, an unclassified felony in violation of R.C. 2903.01(B) with two death specifications pursuant to R.C. 2929.04(A)(5) and R.C. 2929.04(A)(4); attempted aggravated murder of Sandra, a felony of the first degree in violation of R.C. 2923.02(A), (E) and R.C. 2903.01(B), (C); and aggravated robbery, a felony of the first degree in violation of R.C. 2911.01(A)(1). After investigators learned of Appellant's attempts to intimidate witnesses and his plans regarding Sandra, a secret indictment was filed adding a second attempted aggravated murder charge and a witness intimidation charge.

**{¶8}** At trial, a DNA expert testified that the blood found on Appellant's shoe matched Robert's DNA sample. The testimony indicated "that the same DNA pattern occurs in approximately 1 in 220,000 Caucasians, 1 in 81 million African-Americans, and 1 in 1.8 million Hispanics." *Id.* at ¶ 21. The state's key witness was Sandra, who identified Appellant in court as the perpetrator. Multiple inmates Appellant attempted to hire to kill Sandra and to intimidate witnesses also testified regarding the offers Appellant had made to them. Appellant's two friends testified concerning the statements Appellant made to them about the gunshot residue test.

Case No. 18 MA 0098

{¶9} On April 14, 1999, Appellant was convicted by a jury on all counts. On May 6, 1999, Appellant was sentenced to death.

{¶10} Appellant's case has a lengthy appellate history in both the state and federal courts. On September 24, 2002, the Ohio Supreme Court affirmed Appellant's convictions and sentence in *Group I.* While Appellant's direct appeal was pending with the Ohio Supreme Court, he filed a postconviction petition in the trial court. Appellant was appointed counsel. After a series of events that delayed a ruling, the trial court eventually denied his petition on December 31, 2009. We affirmed the trial court's decision in *State v. Group,* 7th Dist. Mahoning No. 10 MA 21, 2011-Ohio-6422 ("*Group II*"), appeal not allowed by *State v. Group,* 135 Ohio St.3d 1431, 2013-Ohio-1857, 986 N.E.2d 1021. An untimely application to reconsider was denied.

{¶11} Appellant then filed a writ of habeas corpus in the United States District Court for the Northern District of Ohio. The writ was filed on July 29, 2013 and the Federal Public Defender's Office was appointed to represent him. On January 20, 2016, the federal court denied Appellant's petition in *Group v. Robinson,* 158 F.Supp.3d 632 (N.D. Ohio.2016). Appellant's certificate of appealability was denied in *Group v. Robinson,* 158 F.Supp.3d 632 (N.D. Ohio.2016). On December 21, 2017, the Sixth Circuit Court of Appeals denied an *en banc* review.

{¶12} On March 19, 2018, Appellant filed a petition seeking certiorari in the United States Supreme Court which was also denied.

{¶13} On March 29, 2018, Appellant filed a motion for leave to file a motion for a new trial. On June 25, 2018, the trial court denied leave. It is from this judgment entry that Appellant appeals.

**{¶14}** We note that while the instant appeal was pending, the Ohio Supreme Court granted the state's motion to set an execution date.

## ASSIGNMENT OF ERROR NO. 1

The trial court abused its discretion, and violated Appellant's due process rights, when it denied Appellant's Motion for Leave to File a New Trial Motion Under Criminal Rule 33(B) without considering Appellant's supporting evidence. U.S. Const. amend. 14; Ohio Const. Art. I, § 16. (T.d. 367, Judgment Entry).

## ASSIGNMENT OF ERROR NO. 2

Trial counsel violated Appellant's right to the effective assistance of counsel. U.S. Const. amends. 6 and 14; Ohio Const. Art. I, § 10.

**{¶15}** Appellant first argues that the trial court erroneously denied his request for leave to file a motion for a new trial without considering the affidavit of his federal public defender. Second, he argues that his trial counsel provided ineffective assistance of counsel based on inadequate cross-examination of multiple witnesses and because counsel failed to obtain a DNA expert to rebut the state's DNA witness. Although he concedes that the trial court did not rule on his second argument, he raises it on appeal for preservation purposes.

**{¶16}** The state responds that Appellant failed to establish the evidence attached to his motion is newly discovered. Although counsel in Appellant's federal case was not permitted to represent him on state matters during his habeas corpus review, Appellant

has not explained why his current counsel could not represent him in state court at the time the evidence was allegedly discovered. Regardless, the state argues that the actual evidence on which Appellant bases his current request for a new trial has been in existence and known by Appellant since his initial trial. According to the state, the only new "evidence," the affidavits themselves, have not been "discovered." Instead, they were created based on opinions about testimony found within the initial trial transcripts.

{¶17} A trial court's decision overruling a Crim.R. 33 motion for new trial is reviewed for abuse of discretion. *State v. Hawkins*, 66 Ohio St.3d 339, 350, 612 N.E.2d 1227 (1993).

{¶18} Pursuant to Crim.R. 33(B):

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶19} If a motion for new trial based on allegations of newly discovered evidence is filed beyond the 120-day time limit in Crim.R. 33(B), the defendant must request leave to file the motion in order to establish, by clear and convincing evidence, that the

defendant was unavoidably delayed in filing the motion. *State v. Lordi*, 149 Ohio App.3d 627, 2002-Ohio-5517, 778 N.E.2d 605, ¶ 25 (7th Dist.).

**{¶20}** "[A] party is 'unavoidably prevented' from discovering the new evidence if the party had no knowledge of the existence of newly claimed evidence and could not have learned of its existence within the time prescribed by the rule with the exercise of reasonable diligence." *State v. Brown,* 7th Dist. Mahoning Nos. 17 MA 0140; 18 MA 0065, 2018-Ohio-5128, ¶ 18, citing *State v. Glover*, 2016-Ohio-2833, 64 N.E.3d 442, ¶ 27 (8th Dist.).

**{¶21}** Before a trial court may grant a motion for a new trial in a criminal case on the basis of newly discovered evidence, the defendant must show that the new evidence: (1) has been discovered since the trial, (2) could not have been discovered prior to trial through the exercise of due diligence, (3) is material to the issues, (4) is not cumulative to other known evidence, (5) does not merely impeach or contradict the other known evidence and (6) raises a strong probability that the result of the case will change if a new trial is granted. *State v. Dew,* 7th Dist. Mahoning No. 13 MA 174, 2016-Ohio-274, ¶ 9, citing *State v. Barber*, 3 Ohio App.3d 445, 447, 445 N.E.2d 1146 (10th Dist.1982); *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947).

**{¶22}** "A criminal defendant is barred 'from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial that resulted in that judgment of conviction or on appeal from that judgment.' " *Dew* at ¶ 10, *citing State v. Dew*, 7th Dist. Mahoning No. 12 MA 18, 2013-Ohio-2549, ¶ 26; *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus.

{¶23} Appellant attached an affidavit from his federal public defender, Alan C. Rossman, intending to demonstrate that he was unavoidably prevented from obtaining certain evidence. This "new evidence" consists of affidavits and sworn declarations from Attorney Christine Funk, Dr. Michael Baird, and Dr. Daniel Krane.

{¶24} Appellant focuses his argument on his contention that the trial court did not consider the affidavit from Rossman. According to Rossman, once "new evidence" was discovered in this matter, his office requested permission from the federal court to return to state court to file a motion for a new trial. The request was denied. Rossman avers that his office also requested this permission from the Sixth Circuit during the pendency of Appellant's federal appeal and was again denied. According to Rossman, federal law prohibits a federal public defender from initiating a state action without prior federal judicial authorization. While Rossman concedes that this law contains exceptions Appellant may have satisfied, the public defenders' office has a policy to act only with judicial authorization.

{¶25} Appellant contends the trial court completely disregarded Rossman's affidavit and based its decision solely on the Funk, Baird, and Krane affidavits. Contrary to Appellant's argument, the trial court's judgment entry indicates that it did consider Rossman's affidavit. In relevant part, the entry states: "Upon review of the affidavits and arguments, Defendant has failed to establish that he was unavoidably prevented from discovering the alleged new evidence - i.e., Dr. Baird's affidavit, Dr. Dan Krane's statement, and Christine Funk's Report." (8/10/18 J.E., p. 3.) It appears from this quoted passage that even though the court did not specifically name Rossman's affidavit, the trial court did, in fact, consider it. We read the entry to state that because the court rejected

Rossman's explanation, it found Appellant was not unavoidably prevented from discovering the "new evidence" contained within the Baird, Krane, and Funk affidavits.

{¶26} Appellant also contends that even if the trial court considered Rossman's affidavit, the court erred in failing to rule that Appellant was unavoidably prevented from discovering the information contained in the other three affidavits. He hinges his argument that he was unavoidably prevented from discovering this so-called evidence only on his contention that the federal court would not give Rossman permission to file the evidence in state court and Appellant could not secure other counsel to file. There are several problems with Appellant's argument. As an initial note, Appellant focuses on the fact that he is indigent and could not obtain counsel to file the state claim. At no time does he explain why he was prevented from filing his motion for new trial *pro se*.

{¶27} Even so, there is nothing in this record to suggest that Appellant even attempted to secure counsel to represent him in state court. Rossman's affidavit avers solely that Rossman and his office could not represent Appellant in state court, not that Rossman or Appellant attempted to secure other representation. There is nothing within the record to support the self-serving statement at oral argument that several attorneys declined to accept his case before he finally found his current counsel. Again, the only evidence contained in Rossman's affidavit is an explanation as to why Rossman, himself, could not file a state court motion for new trial. This record does not reveal that Appellant was unavoidably prevented from discovering the evidence he would like to use to request a new trial. For this reason alone Appellant's argument is not well taken.

{¶28} Additionally, the Baird, Funk, and Krane affidavits are not newly discovered nor do they technically contain evidence. Dr. Baird is the Chief Science Officer and

Case No. 18 MA 0098

Laboratory Director of DNA Diagnostics Center. At trial, defense counsel informed the trial court that its DNA witness, Dr. Baird, could not testify, as his employer had acquired the company that employed the state's witness. According to Dr. Baird's affidavit, the acquisition occurred after the report at issue was generated, prior to the initial trial.

**{¶29}** Attorney Funk is licensed to practice in the State of Minnesota and also works as a private consultant on DNA cases. Funk did not date her report. The only date present is the date the document was filed in the federal court, which is February 17, 2016. Funk asserts that Appellant's defense counsel was ineffective for representing to the jury that a DNA expert would be testifying for the defense when such testimony was not presented, for failing to object to the testimony from the state's expert, for failing to obtain a DNA expert to observe the state's witness and to testify in rebuttal of the state's witness, for inadequate cross-examination of the state's expert witness regarding the possibility of a mixed sample, and the false representation to the court regarding the availability of the defense expert witness.

**{¶30}** Dan Krane is a professor at Wright State University. Krane avers that it was inappropriate for a witness to state that to "a reasonable degree of certainty" the blood on Appellant's shoe belonged to the victim. (4/12/16 Krane Aff., p. 2.) At trial, the state's DNA expert testified "that the same DNA pattern [found on Appellant's shoe] occurs in approximately 1 in 220,000 Caucasians, 1 in 81 million African-Americans, and 1 in 1.8 million Hispanics." *Group I* at ¶ 21. Presumably, it is this testimony that Krane questions.

**{¶31}** Appellant raised the failure of his trial counsel to obtain a DNA expert in his direct appeal to the Ohio Supreme Court and in his postconviction relief petition, which was appealed to this Court. Appellant also raised ineffective assistance of counsel

arguments regarding trial counsel's preparation for, and cross-examination of, the state's DNA expert witness, as well as contamination issues. Clearly, then, this "evidence" was well known to Appellant at trial and it is not newly discovered. These affidavits merely supplement facts and evidence known at the time of trial with different interpretations of these facts.

**{¶32}** Regardless, none of this "evidence" is particularly helpful to Appellant. Even if Appellant were successful and permitted to file a motion for new trial, none of this is likely to change the outcome of his trial. As discussed by the state, the DNA evidence was only a small portion of the evidence against him at trial and played a relatively minor role. Sandra testified about the events leading to the shooting, including the receipts and invoice discrepancies and her earlier interactions with Appellant. She identified Appellant as the shooter in court. Additionally, several inmates testified that Appellant offered them money in exchange for intimidating witnesses and murdering Sandra. At least two of Appellant's friends provided testimony regarding Appellant's fear of the results of his gunshot residue test and that he asked at least one of them to lie and tell investigators that he was at the shooting range with Appellant the day before the shooting. Based on this evidence, there is little possibility of change in the outcome of the trial even if the DNA evidence would be ruled improper.

**{¶33}** Because Appellant has failed to demonstrate through Rossman's affidavit or by any other means that he was unavoidably prevented from discovering the information contained in the three affidavits in this matter, the trial court properly denied his motion for leave to file a motion for a new trial. Accordingly, Appellant's first and second assignments of error are without merit and are overruled.

## Conclusion

**{¶34}** Appellant argues that the trial court improperly disregarded an affidavit he claims demonstrates that he was unavoidably prohibited from discovering certain materials he seeks to use as a basis for a new trial. Appellant also argues that evidence attached to his motion for leave to file a new trial establishes that he received ineffective assistance of counsel. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Robb, J., concurs.

Mayle, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**